```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Edward D. Berthiaume**

    **v.**                                                Case No. 09-cv-221-PB
                                                                             Opinion No. 2010 DNH 150

**Ticor Insurance Services, Inc. et al.**


### MEMORANDUM AND ORDER

Edward Berthiaume has sued Ticor Insurance, Inc. for breach of contract, alleging that Ticor, a title insurance company, failed to conduct an updated title search prior to Berthiaume's closing on property that was subject to a federal lien of which he was unaware.  Ticor has responded with a counterclaim alleging that Berthiaume owes payments on a promissory note and mortgage that have been assigned to Ticor.  Ticor argues in separate motions for summary judgment that the breach of contract claim is barred by the statute of limitations and that undisputed facts demonstrate that it is entitled to prevail on its counterclaim.  For the reasons set forth below, I grant Ticor's motion addressing the breach of contract claim and deny its other summary judgment motion without prejudice.

### I. **BACKGROUND**

Berthiaume purchased real property located at 26 Channel Lane in Goffstown, New Hampshire ("the property") from Gary Bilodeau on or about March 24, 2005, and mortgaged the property to BNC Mortgage ("BNC"). Berthiaume and BNC both purchased title insurance policies from Ticor. (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Doc. No. 20-1, at 2.) Unbeknownst to Berthiaume and Ticor, however, the federal government had filed a lien on the property under federal statutes authorizing the forfeiture of property used in the commission of drug crimes.[1] (See Def.'s Answer, Doc. No. 5, at 6.) Thus, when Berthiaume closed on the property in March 2005, he "took title" to the property subject to the federal government's lien.

---

[1] The federal government commenced the forfeiture proceeding because Bilodeau allegedly used the property in the commission of drug crimes. Ticor argues that Berthiaume "knew of, acquiesced in, and/or otherwise participated in the criminal conduct" that gave rise to the federal government's forfeiture proceeding, that he concealed that information from Ticor, and that he purchased the property using drug-trafficking proceeds. (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J. on Countercl. II, Doc. No. 29-1, at 3). Berthiaume's alleged criminal conduct has no bearing on whether his claims are barred by the applicable statute of limitations or whether he defaulted on payments owed to Ticor; thus, I do not address the details of that alleged criminal conduct here.

In approximately August 2005, Berthiaume received notice of the federal government's lien and notified Ticor.  Ticor, by and through its Vice President, Howard Kleiman,[2] hired attorney David Vicinanzo to represent Berthiaume in the forfeiture proceeding. (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Doc. No. 20-1, at 2.)  Vicinanzo later withdrew as Berthiaume's counsel, and Ticor refused to provide Berthiaume with another attorney. Berthiaume then hired Attorney Beryl Cohen at his own expense.[3] (See id. at 4.)  Berthiaume failed to appear at the forfeiture hearing, and the court entered a default against him on January 18, 2006.  The government then moved for a final order of forfeiture, of which Berthiaume was notified on January 20, 2006. The court granted the government's motion on January 24, 2006.[4]

---

[2] Berthiaume asserted a misrepresentation claim against Kleiman.  I dismissed that claim in a written order on January 21, 2010, as Berthaiume had failed to plead the essential elements of that claim.  (See Order Granting Mot. for J. on the Pleadings, Doc. No. 19.)

[3] Berthiaume alleges that Attorney Cohen committed malpractice and negligently handled his forfeiture claim.  (See Compl., Doc. No. 4, ¶¶ 2, 17-22.)  The merits of Berthiaume's claim against Cohen are not affected by this order.

[4] The government thereafter moved to amend the order of forfeiture for reasons immaterial to the present case.  The court granted that motion on February 6, 2006.  (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Doc. No. 20-1, at 5.)

(See id. at 4-5.)  This gave the government "all right, title and interest" in the property, "free from the claims of any other party, including mortgagees and their assigns." (See Def.'s Mot. for Summ. J. Ex. 2B, Doc. No. 20-3, at 2-3.)

Since the government's lien was filed before Berthiaume closed on the property, BNC's mortgage interest was subordinate to the federal government's interest in the property.  Ticor unsuccessfully petitioned the government for remission or mitigation of the forfeiture order, and, under the terms of BNC's title insurance policy, was obligated to pay BNC the $131,850 principal balance of Berthiaume's mortgage on account of the forfeiture.  (See Pl.'s Objection to Mot. for Summ. J. Ex. CC, Doc. No. 23-3.)  On October 24, 2006, BNC assigned to Ticor the full value of Berthiaume's mortgage and promissory note.  (See Def.'s Mot. for Summ. J. on Countercl. II, Doc. No. 29-2, Ex. A.)

On January 30, 2009, Berthiaume filed suit in New Hampshire Superior Court, alleging that Ticor breached its contract with Berthiaume in failing to conduct an updated title search, which would have revealed the federal lien, immediately prior to closing. (See Compl., Doc. No. 4, ¶¶ 9, 22.)  The defendants later removed the case to this court on diversity of citizenship grounds.  On July 21, 2009, Ticor filed its answer, along with

two counterclaims: (1) a claim for offensive recoupment to recover the amounts that it paid on account of the forfeiture proceeding and the real property's forfeiture, and (2) a claim to recover missed payments on the mortgage and promissory note that BNC assigned to Ticor.  (See Def.'s Answer, Doc. No. 5, ¶¶ 52, 53.)  On February 3, 2010, Ticor moved for summary judgment as to Berthiaume's contractual claims, arguing that they were barred by the applicable statute of limitations.  (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Doc. No. 20-1.)  On May 13, 2010, Ticor also moved for summary judgment on its second counterclaim, alleging that Berthiaume had failed to make the required payments on the note and mortgage that had been assigned to Ticor.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder

of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  ANALYSIS

#### A.  Berthiaume's Claim Against Ticor

Under New Hampshire law, a breach of contract claim must "be brought within three years of the act or omission complained of" or, under the discovery rule exception, "within three years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." See N.H. Rev. Stat. Ann. § 508:4, I ( 1997); see also Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 637 (1993)(applying § 508:4 to contract claims).  In a contract action, the relevant "act or omission" is a party's alleged breach; thus, the statute of limitations begins to run when the alleged breach occurs, or when the plaintiff knew or reasonably should have known that a breach occurred.  See, e.g., Coyle v. Battles, 147 N.H. 98, 100 (2001); A & B Lumber Co., LLC v. Vrusho, 151 N.H. 754 (2005).

Berthiaume argues that Ticor breached its contract of insurance when it "failed to update the title [of the property] between the scheduled and actual closing dates," and therefore "failed to discover the new federal lien." (Compl., Doc. No. 4, ¶ 9.) This claim is plainly time-barred. Berthiaume admits that he learned of the federal forfeiture lien, at the latest, on August 1, 2005; thus, it is undisputed that he knew of Ticor's alleged breach by this date. See § 508:4, I; (Def.'s Mot. for Summ. J. Ex. 3, Doc. No. 20-4, ¶ 2.) Berthiaume did not file suit, however, until January 30, 2009--over five months after his claim expired under the three-year statute of limitations.[5] See § 508:4, I.

Berthiaume attempts to salvage his claim by arguing that Ticor subjected him to "[c]ontinuing [v]iolations" that extended "months into 2006". (Pl.'s Objection to Def.'s Mot. for Summ. J., Doc. No. 23, at 2.) Specifically, he alleges that he made

---

[5] Berthiaume does not allege that Ticor breached its contract of insurance in failing to provide him with an attorney or insurance coverage. Even if he had asserted such a claim, Berthiaume himself admits that this breach occurred, and that he was aware of this breach, by December 31, 2005--more than three years before he filed his claim on January 30, 2009. (See Def.'s Mot. for Summ. J. Ex. 3, Doc. No. 20-4, ¶ 8.) Thus, his claim would still be barred by the three-year statute of limitations. See § 508:4, I.

mortgage payments on the property, at Kleiman's direction, until at least March of 2006.  (See id. at 3.)  Under this theory, Berthiaume would have had until March of 2009--three years after these alleged "continuing violations" occurred--to file his claim; thus, his filing date of January 30, 2009 would be timely.  See § 508:4, I.

    Berthiaume's reliance on the so-called "continuing wrong" doctrine is misplaced.  Under the "continuing wrong" doctrine, an action will not be barred by the statute of limitations "when a tort is of a continuing nature, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action[.]"  Singer Asset Fin. Co., LLC v. Wyner, 156 N.H. 468, 478 (2007).  The doctrine, however, has traditionally been applied only in tort actions, and Berthiaume cites no cases that have applied the doctrine to a breach of contract claim.  Even assuming, without deciding, that the doctrine does apply in the contractual context, the evidence does not support Berthiaume's claim.  Berthiaume lists a series of phone calls in which Kleiman allegedly told Berthiaume that "Ticor was buying the property back" and that Berthiaume "must continue to make [ ] mortgage payments" on the property.  (See Pl.'s Objection to Def.'s Mot. for Summ. J., Doc. No. 23, at 3.)  The latest of

those phone calls took place, however, on January 24, 2006--over three years prior to the date on which Berthiaume filed suit. (See id.)  Thus, even if those calls did demonstrate that Ticor breached the terms of its insurance policy, they would not warrant an extension of the limitations period.  See Singer, 156 N.H. at 478.

### B.   Ticor's Counterclaim Against Berthiaume

Ticor also moves for summary judgment on its counterclaim that Berthiaume defaulted on the mortgage and promissory note that Berthiaume executed in order to finance his purchase of the property.[6]  (See Def.'s Mot. for Summ. J. on Countercl. II, Doc. No. 29-2, Ex. A.)  It is undisputed that Ticor made a payment of $131,850 to BNC in order to satisfy Berthiaume's overdue mortgage payments, that the mortgage and promissory note were validly assigned to Ticor, and that Berthiaume failed to make the required payments. (See Pl.'s Objection to Mot. for Summ. J. Ex. CC, Doc. No. 23-3; Pl.'s Objection to Def.'s Mot. for Summ. J. on

---

[6] Ticor argues that the allegations set forth in its counterclaim must be admitted on account of Berthiaume's failure to file a responsive pleading in accordance with Fed. R. Civ. P. 8(b)(6).  (See Def.'s Reply in Supp. of Mot. for Summ. J. on Countercl. II, Doc. No. 35, at 2.)  As Ticor concedes, however, Berthiaume's objection disputes Ticor's allegations, even if it does not comply with the formal requirements of responsive pleading.  I therefore consider Berthiaume's arguments.

Countercl. II Ex. QQ, Doc. No. 32-5, ¶¶ 26-29.)  Berthiaume argues, however, that Ticor is estopped from collecting any overdue payments on account of its own misconduct, and Ticor has not responded to this allegation.  (See Pl.'s Objection to Def.'s Mot. for Summ. J. on Countercl. II, Doc. No. 32, ¶ 4; Def.'s Reply in Supp. of Mot. for Summ. J. on Countercl. II, Doc. No. 35.)  Since this issue has not been adequately briefed by the parties, I am not prepared to grant summary judgment on Ticor's counterclaim at this time.

## IV.   CONCLUSION

For all of the foregoing reasons, I grant Ticor's motion for summary judgment on Berthiaume's breach of contract claim (Doc. No. 20), and deny Ticor's motion for summary judgment on its second counterclaim (Doc. No. 29) without prejudice.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 13, 2010

cc:   Timothy A. Gudas, Esq.
      Edward D. Berthiaume